UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 5:25-cr-41 |
| | ) | |
| Plaintiff, | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| | ) | |
| v. | ) | |
| | ) | |
| TRAVARIS PERKINS, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

Defendant Travaris Perkins ("Defendant" or "Perkins") moves this Court for revocation of Magistrate Judge Jennifer Dowdell Armstrong's Detention Order pursuant to 18 U.S.C. § 3145(b). (Doc. 21.) The government timely opposed the motion. (Doc. 22.) For the reasons stated below, the motion is DENIED.

**I.     Background**

    **A.     Indictment and Arraignment**

On February 4, 2025, a federal grand jury returned an indictment charging Perkins with one count of being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1). (Doc. 1.) An arrest warrant was issued, and Perkins was arrested on February 6, 2025. (Doc. 6.) Perkins was arraigned the same day, and the government moved for detention.

    **B.     Pretrial Services Office Recommendation**

The report prepared by the Pretrial Services Department ("Report") determined that Perkins was both a risk of flight and a danger to the community. (Doc. 5.) In evaluating non-appearance, the Report noted Perkins' mental health and substance abuse history; criminal activity while on supervision; and prior instances of non-compliance while on pretrial, probation,

parole, or supervised release.  (*Id*. at 21.)[1]  In evaluating danger to any others or the community, the Report listed the same factors assessed for non-appearance and two additional factors: (1) criminal history or charges involving violence or domestic violence and (2) a pattern of similar criminal activity.  (*Id*.)

      **B.**      **Detention Hearing and Order**

On February 14, 2025, a detention hearing was held before Magistrate Judge Armstrong.  The government proffered the Indictment and the Report.  (Doc. 20 at 68.)  Perkins proffered the Report and specifically addressed his treatment needs, housing arrangements, willingness to care for his mother, and appearances while on bond for the related Summit County case.  (*Id*. at 68-70.)  As to treatment needs, Perkins advised the court of his willingness to enter an inpatient treatment facility.  (*Id*. at 70.)

In argument, the government acknowledged Perkins' mental health and substance abuse concerns and noted Perkins had stopped taking his prescribed mental health medication.  Perkins' criminal history also revealed at least six prior community control and supervised release violations.  (*Id*. at 71-73.)  As to possible conditions of release, namely inpatient treatment and returning to his brother's home, the government argued inpatient treatment would not prevent Perkins from leaving the facility.  (*Id*. at 73.)  Thus, such a condition would not sufficiently address the danger Perkins poses to the community.  To make this point, the government noted Perkins' brother's statement to the Pretrial Services Officer that Perkins becomes angry with the children living next door and believes they are talking about him.  (*Id*. at 72.)  The weapons charge in this case stems from Perkins approaching a female as she sat on a

---

[1] For ease and consistency, record citations are to the electronically stamped CM/ECF document and PageID# rather than any internal pagination.

bench. (*Id*.) The female was unknown to him, but he began to argue with her. (*Id*.) Perkins allegedly possessed a loaded firearm during this confrontation. (*Id*.)

While acknowledging the government's arguments, Perkins stressed the lack of a presumption for detention and the conditions the Court could impose to permit him to safely remain in the community. (*Id*. at 74-76.) As to flight, there were no missed court hearings since 2007. (*Id*. at 74.) As to danger, the absence of any convictions for violent offenses demonstrates Perkins posed no threat to others. (*Id*. at 75.) Inpatient treatment coupled with returning to his brother's home and getting a job would reasonably assure his appearance in court and the safety of the community, Perkins urged. (*Id*.)

Magistrate Judge Armstrong ordered Perkins detained. (Doc. 15.) After setting forth her analysis of the Section 3142 factors, all of which she found weighed in favor of detention, Magistrate Judge Armstrong determined the government met its burden of proving no condition or combination of conditions of release would reasonably assure the safety of any other person or the community by clear and convincing evidence. (*Id*. at 52-53.)

### C. Parties' Positions on Appeal

Perkins challenges Magistrate Judge Armstrong's conclusion that he poses a danger to others and the community in two ways: (1) firearms offenses do not warrant a presumption of detention, and detention is not appropriate in simple possession cases like this one; and (2) mental health and substance abuse concerns can be mitigated through treatment, which would include addressing Perkins' increased agitation with children and arguing with strangers. (Doc. 21 at 83-87.)

In opposition, the government highlighted the facts argued at the detention hearing and reiterated its position that no condition or combination of conditions could reasonably assure the

safety of others and the community.  (Doc. 22 at 89-91.)

II.     **Analysis**

Title 18, United States Code, Section 3145(b) provides, in pertinent part, as follows:

> If a person is ordered detained by a magistrate judge, . . . the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order.  The motion shall be determined promptly.

District courts review a magistrate judge's release or detention order *de novo*, meaning that the district court makes an independent determination as to whether any condition or combination of conditions can assure the defendant's appearance or the safety of the community. *United States v. Johnson*, No. 22-cr-390, 2022 U.S. Dist. LEXIS 127146, at *4–5 (N.D. Ohio July 18, 2022); *United States v. Trent*, No. 21-cr-516, 2022 U.S. Dist. LEXIS 2339, at *4 (N.D. Ohio Jan. 5, 2022).  A hearing on a Section 3145(b) motion is not required.  *United States v. Romans*, 2000 U.S. App. LEXIS 10708, *3 (6th Cir. May 9, 2000) (affirming district court's detention order after noting district court reviewed the magistrate judge's detention order and detention hearing transcript *de novo*).

Under the Bail Reform Act ("Act"), detention is only appropriate "if a judicial officer 'finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]'" *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010) (quoting 18 U.S.C. § 3142(e)).  The statutory framework for analyzing whether release is proper requires weighing four specific factors:

> (1) The nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involved a minor victim or controlled substance, firearm, explosive, or destructive device;
>
> (2) The weight of the evidence against the person;
>
> (3) The history and characteristics of the person, including –

    (A) The person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

    (B) Whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

  (4) The nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g)(1)-(4). "The government must prove risk of flight by a preponderance of the evidence, and it must prove dangerousness to any other person or the community by clear and convincing evidence." *United States v. Hinton*, 113 Fed. Appx. 76, 77 (6th Cir. 2004) (citing *United States v. Cisneros*, 328 F.3d 610, 616 (10th Cir. 2003)).

    As part of its *de novo* review, the Court has reviewed the following:

1. Indictment (Doc. 1);
2. Pretrial Services Report (Doc. 5);
3. Detention Hearing Transcript (Doc. 20);
4. Detention Order (Doc. 15);
5. Defendant's Motion to Revoke Detention Order (Doc. 21);
6. Government's Response (Doc. 22); and
7. Judgment and Supervised Release Order in *United States v. Perkins*, Case No. 5:14-cr-221 (J. Gwin) (Docs. 24 and 51, respectively).

As acknowledged by the parties, this is not a case in which the statutory presumption of detention applies. (Doc. 20 at 351 (addressing 18 U.S.C. § 3142(e)(3)). This Court's assessment of the Section 3142(g) factors is set forth below.

A.   **Nature and Circumstances of the Offense Charged**

The offense charged does not carry a presumption of detention, but the alleged facts do not, as Perkins argues, present a simple firearm possession case. As alleged, on or about October 8, 2024, Perkins approached an unknown woman sitting on a park bench. (Doc. 1; Doc. 22 at 90.) He began to argue with her. (Doc. 22 at 90.) Perkins was seen holding his waistband as he argued with the unknown woman. (*Id*.) His voice was loud enough to attract the attention of nearby officers with the Akron Police Department. (*Id*.) Officers intervened. (*Id*.) Perkins had a loaded firearm in his waistband. (*Id*.)

This factor weighs in favor of detention.

B.   **Weight of the Evidence Favoring Release**

This factor focuses on the weight of the evidence relating to release, not offense conduct. *United States v. Brock*, 2025 U.S. App. LEXIS 7320, *3-4 (6th Cir. Mar. 28, 2025) ("The second factor 'goes to the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt.'") (quoting *Stone*, 608 F.3d at 948).

Perkins' mental health and substance abuse concerns are well documented. Prior to his arrest, he ceased taking prescribed mental health medications. (Doc. 5 at 11.) As reported to the Pretrial Services Officer, he was hearing voices, confronting strangers, and becoming increasingly agitated with the children living next door to him. (*Id*.) Perkins does not dispute these facts, but rather contends he will voluntarily submit to inpatient treatment to address them. (Doc. 21 at 80.) The Court must weigh Perkins' stated willingness to participate in inpatient treatment with his history of participation in such programs.

In 2014, Perkins was convicted of being a felon in possession of a firearm. *United States v. Perkins*, Case No. 5:14-cr-221 (J. Gwin). The Court imposed an 82-month term of

incarceration and three years of supervised release. (*Id*. at Doc. 24.) On December 15, 2021, so within one year of being released from the Bureau of Prisons, Perkins was found to be in violation of the terms and conditions of his supervised release and sentenced to 21 months of incarceration with no supervised release to follow. (*Id*. at Doc. 51.) The admitted supervised release violations were a new law violation, drug use, failure to comply with drug testing, and failure to comply with mental health and substance abuse treatment. (*Id*.) According to the Bureau of Prisons' website, Perkins was released from custody on April 19, 2024. (See https://www.bop.gov/inmateloc/; see also Doc. 5 at 11.)

The Report details Perkins' criminal history. (Doc. 5 at 13-21.) His prior convictions include narcotics and firearms offenses. (*Id*.) These types of prior convictions weigh in favor of finding dangerousness. *Brock*, 2025 U.S. App. LEXIS 7320 at *4.

This factor weighs in favor of detention.

C.  **History and Characteristics of the Person**

Section 3142(g)(3)(A) and (B) specify the factors the Court must consider in assessing Perkins' history and characteristics. Perkins is 43 years old. (Doc. 5 at 10.) He is a lifelong resident of the area with demonstrated employment between his release from the Bureau of Prisons in April 2024 and his arrest on this charge. (*Id*. at 10-11.) Perkins has family ties, including a brother who would have Perkins live with him if released. (*Id*.) He would also give Perkins a job. (*Id*.) This family support is commendable, but it appears to be the same family support available to him at the time of the instant offense. The Report details Perkins' criminal history as well as numerous instances of community control violations. (Id. at 13-21.) Perkins argues he has not failed to appear as ordered since 2007. (Doc. 20 at 74.) But this timeline fails to account for the combined 103 months Perkins was in prison for a prior federal firearms

offense and supervised release violation.[2]

This factor weighs in favor of detention.

**D.      Nature and Seriousness of the Danger that the Release Poses**

While mindful of the continued presumption of innocence as to the charged offense, the Court must evaluate the proffered evidence and arguments in assessing whether the combination of conditions available, to include inpatient treatment, home detention, prohibitions against possessing firearms and using alcohol or illegal substances, will reasonably assure the safety of any other person and the community.

Despite prior firearms convictions, Perkins allegedly possessed a loaded firearm within six months of being released from the custody of the Bureau of Prisons. Armed with that weapon, he confronted an unknown woman and began yelling at her – a confrontation significant enough to draw the attention of nearby officers. And while his prior narcotics-related offenses may be tied to his own substance abuse disorder, at least four prior convictions are drug trafficking convictions. (Doc. 5 at 14, 16-17, 20.) And Perkins' assertion that he will participate in inpatient treatment does not give the Court the assurance it needs. He violated supervised release, in part, because he did not participate in mental health and substance abuse treatment as ordered. More recently, Perkins stopped taking prescribed medications and did not return to taking them despite acknowledging he was hearing voices. Perkins' brother disclosed Perkins had become irrational and confrontation with others, to include becoming agitated with neighboring children Perkins believed were talking about him.

This factor weighs in favor of detention.

---

[2] This time frame also does not account for a nine-month period of incarceration imposed by the Summit County Court of Common Please in Case No. CR-2021-11-4234-A, which was imposed on March 9, 2022. This delayed Perkins' transfer to federal custody on the 21-month federal revocation sentence. (*Id.* at Doc. 54.)

### III.    Conclusion

Having conducted a *de novo* review of the record, and after considering the statutory requirements along with Perkins' arguments for pretrial release, the Court concludes the government has met its burden of demonstrating dangerousness by clear and convincing evidence. All statutory factors weigh in favor of detention. Accordingly, Defendant Travaris Perkins' Motion for Revocation of Detention Order is DENIED, and he will remain in the custody of the U.S. Marshal during the pendency of this case.

**IT IS SO ORDERED.**

Date: April 16, 2025

                                                           BRIDGET MEEHAN BRENNAN
                                                           UNITED STATES DISTRICT JUDGE